IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

_____

|   |   |   |
|---|---|---|
| HILDA L. SOLIS, Secretary of Labor, | : | |
| U.S. Department of Labor, | : | Case No. C3-09-cv-00257 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE THOMAS M. ROSE |
| v. | : | |
| | : | |
| CASCOM, INC., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____

**PLAINTIFF'S POST-HEARING BRIEF ON DAMAGES**

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page No.**

*Anderson v. Mt. Clemens Pottery,* 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515 (1946)…………………………………………………………………………… 4, 5

*Brock v. Big Bear Mkt. No. 3*, 825 F. 2d 1381 (9th Cir. 1987)………………………….. 7

*Fegley v. Higgins*, 19 F. 3d 1126 (6th Cir. 1994)…………………………………....... 5

*Martin v. Indiana Michigan Power Co.,* 381 F. 3d 574 (6th Cir. 2004)………………... 7

*Reich v. S. New England Telecom. Corp.*, 121 F. 3d 58 (2nd Cir. 1997)………………. 7

*U.S. Dep't of Labor v. Cole Enters.*, 62 F. 3d 775 (6th Cir. 1995)……………………... 5, 7


**Statutes**

29 U.S.C. § 201 et seq. (Fair Labor Standards Act of 1938, as amended)…………….. 1, 4, 7, 8

## INTRODUCTION

Plaintiff, Secretary of Labor, United States Department of Labor, in this action seeks an injunction and back wages for overtime and recordkeeping violations under Sections 17 and 16(c) of the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1060, 29 U.S.C. 201 et seq. (the Act). This matter was bi-furcated, with a hearing on liability held on July 11 and 12, 2011. On September 21, 2011, the Court ruled for Plaintiff in the liability phase of this proceeding, finding that Defendants' installers were employees covered by the Act, rather than independent contractors. Accordingly, defendants owe overtime compensation under the Act. A hearing on damages was then held on November 22, 2011. Plaintiff's arguments in support of her calculation of back wages, in the record of this case at Plaintiff's Exhibit 9, are set forth herein. In addition, as discussed below, liquidated damages and an injunction are appropriate in this case.

## STATEMENT OF FACTS

Plaintiff's Investigator, David Huster, testified concerning Plaintiff's calculation of overtime back wages due in this matter. Huster personally prepared the back wage calculation on behalf of the Secretary. In summary, the method of calculation varied depending on whether the installer was working as a trainee, since trainees were paid an hourly rate, or the installer had passed the training period and was paid a piece rate. In addition, the calculation varied depending on whether an installer testified at the liability hearing. For installers who testified, the estimate of hours given in each individual's testimony was used. An average was applied to calculate back wages for the remaining employees.

Cascom did not keep a record of hours worked for its installers (also called

1

technicians).[1]    However, payroll records showing gross wages were provided to Mr. Huster in the course of his investigation, and are in the record at Plaintiff's Exhibit 3.[2] Cascom stipulated on the record that the documents in Plaintiff's Exhibit 3 are its records.[3]    For trainee periods, Huster divided the employee's weekly gross pay by the hourly rate of $10, which yielded the number of hours worked.  The hours in excess of 40 per week were then multiplied by half-time, or $5 to determine the amount of overtime compensation owed.[4]

After the training period, the technicians were paid on a piece rate basis.[5]  For the installers who testified at the liability phase of the hearing and stated their average hours of work on the record, the number of hours given by each employee at trial was used in his back wage calculation.[6]    The earnings were then multiplied by a coefficient, in accordance with a standard table used by the Wage and Hour Division to calculate half-time due.[7]    However, the coefficient was reduced by 25% to allow for non-overtime weeks due to vacations, sick leave, slow periods, or other reasons.[8]

For the remaining employees, who did not testify, an average was used based upon the hours stated by testifying employees.[9]  Mr. Huster's calculation of the average is found at p. 1 of Plaintiff's Exhibit 9.  The top half of the page indicates a summary of testimony from the liability phase of this proceeding, showing the hours stated by each employee and the page of the liability hearing transcript on which the testimony of hours

---

[1] R. at p. 10.  All references to the record herein refer to the transcript of the November 22, 2011 damages hearing.
[2] R. at p. 16-17.
[3] R. at p. 18.
[4] R. at p. 18-19.
[5] R. at p. 19-20.
[6] R. at p. 21-22.
[7] R. at p. 13, Pl. Ex. 9, p. 18A.
[8] R. at p. 14.
[9] R. at p. 12.

appears. The bottom of the page shows two sets of calculations, each indicating a mean, median, and mode. The second set of calculations uses two numbers for Kevin Klatte, who testified that he normally worked 60 hours a week, except that this changed to 35-45 hours a week while he was simultaneously attending the police academy. Huster used the median of 62.5 hours as the number of hours worked by non-testifying employees, including both 40 and 60 to represent Klatte's testimony.[10] As with the testifying employees, the coefficient for 62.5 hours was reduced by 25% to account for non-overtime workweeks.[11] The reduced coefficient was multiplied by the employees' gross earnings to determine additional half-time owed.[12]

The total amount of back wages computed by Investigator Huster was $737,133.[13] Plaintiff's Exhibit 9 contains a summary of the amounts found due each employee at pages 2-17. The coefficient table used in the computations is contained at pages 18, 18A and 19 of Plaintiff Exhibit 9, and the remainder of the exhibit contains individual computation sheets for each employee found due back wages.

Defendants dispute the amount of hours worked as estimated by Plaintiff. In support of this position, Heather Duwel-Mehl, granddaughter of Defendant Julia Gress, testified concerning Defendants' Exhibit A, which purports to show hours worked by five of the employees who testified at the liability hearing. Ms. Duwel-Mehl compiled this exhibit by taking screen shots from the computer system of Time Warner, with whom Cascom contracted to provide cable installation services.[14] The actual Time Warner screen shots are not included in the record. Ms. Duwel-Mehl testified that she converted

---

[10] R. at p. 12.
[11] R. at p. 14.
[12] R. at p. 15.
[13] R. at p. 13.
[14] R. at p. 70-73.

3

the screen shots into a spreadsheet and then estimated total hours "without down time," which consisted of time spent at customers' houses, and "total time in the field," which included travel time.[15]  However, Ms. Duwel-Mehl was uncertain whether time spent at the shop in the morning was included in her calculations.[16]  In fact, a review of the start and stop times on Exhibit A shows that "total time in the field" includes the time from the start of the earliest call to the end of the latest call.  Shop time in the morning does not appear to be included.  Further, Ms. Duwel-Mehl acknowledges that Exhibit A fails to capture "modem count days," meeting times, and inventory time.[17]

## ARGUMENT

### I. Plaintiff's Back Wage Estimate Should Be Affirmed.

It is established that when the employer's records are inadequate, and the employee cannot offer convincing substitutes, the solution is not to penalize the employee by denying him recovery on the ground that he is unable to prove the precise extent of uncompensated work.  This would allow the employer to benefit from its failure to keep records by keeping the benefits of an employee's labor without paying the compensation required by the Act.[18]  In such a situation, where the employer's records are inaccurate or inadequate, the employee has carried his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the

---

[15] R. at p. 87, 91-92.
[16] R. at p. 94, 100-101.
[17] R. at p. 75, 94-95.
[18] *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515 (1946) (superseded by statute on other grounds).

reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result is only approximate.[19] In addition, even where the lack of accurate records grows out of a bona fide mistake, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.[20] An investigator's estimates based upon employee interview statements, the employment records, and the employees' testimony at trial are appropriate considerations in determining the amount of back wages.[21]

In this case, Plaintiff has articulated a reasonable inference of back wages due. Investigator Huster revised his estimate by relying only on witnesses who testified at trial and were subject to cross-examination. The revised estimate is accordingly lower than Plaintiff's original estimate based upon employee interviews.[22] The estimate is also based in part upon Cascom's own payroll records. For the computation of an average for non-testifying employees, Huster used the median from the estimate that included Kevin Klatte twice. This made the estimate more conservative, as a 40-hour non-overtime workweek was included in the averaging.

Defendants, however, have not articulated evidence of the precise amount of work performed, or evidence to negate the reasonableness of the inference drawn by Plaintiff's evidence. Defendants did not call any of their technicians to testify. Defendants did make a computation of the amount of overtime compensation they believe is owed. Defendants' only rebuttal was their Exhibit A, which is insufficient to determine a precise

---

[19] *Id.* at 687-88, 66 S. Ct. at 1192; *Fegley v. Higgins*, 19 F. 3d 1126 (6th Cir. 1994); *U. S. Dep't of Labor v. Cole Enters.*, 62 F. 3d 775 (6th Cir. 1995).
[20] *Mt. Clemens Pottery*, 328 U. S. 688.
[21] *Cole Enters.*, 62 F. 3d 781.
[22] R. at p. 39.

number of hours worked or to negate Plaintiff's estimate.

Exhibit A is inadequate in many respects. First, by the admission of Ms. Duwel-Mehl, work time for tasks such as inventory and meetings were not included. Second, time spent at the shop at the beginning of the work day, as well as travel to the first job of the day, was not included. Ms. Duwel-Mehl was uncertain as to whether an additional half hour per day was included to at least partially account for this time. However, looking at the stop and start times, and the total hours in the field, as set forth on Exhibit A, no additional time appears to have been added. For each employee, a list of start and stop times is listed for each day, but not always in chronological order. If the earliest start time is subtracted from the latest stop time, the result appears to be the number listed as total time in the field for the day. Accordingly, Exhibit A only counts time from arrival at the first job until end of the last job. No time for time spent at Cascom's shop, getting the assigned route, and picking up equipment is included, nor is travel to the first call of the day.

Another problem with Exhibit A is that the supporting Time Warner documents are not included in the record. Without them there is no way to verify the start and stop times listed on Exhibit A. Finally, if Defendants' Exhibit A is intended to indicate that little or no overtime was ever worked, it is in fact rebutted by the hours worked by trainees. Defendants do not dispute the hours computed by Plaintiff for the trainees.[23] Therefore, it is undisputed that overtime hours were regularly worked, even by beginning installers.

In this situation, an employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in

---

[23] R. at p. 8-9.

accordance with the requirements of Section 11(c) of the Act.[24] The reasonable estimate by the Plaintiff should be affirmed, and the Court should order payment of back wages in the amount of $737,133, as set forth in detail in Plaintiff's Exhibit 9.

## II. Plaintiff Is Also Entitled To Liquidated Damages And An Injunction.

Liquidated damages are to be assessed under the Act in an amount equal to back wages unless the employer can show that it acted in good faith and took affirmative steps to ascertain and comply with the requirements of the FLSA.[25] Defendants have not made a showing of good faith and affirmative steps to ascertain and comply with the requirements of the Act. The Court previously ruled in this matter, in its Findings of Fact and Conclusions of Law Regarding Liability, that Defendants failed to establish a good faith defense. The court pointed out that no such steps to ascertain and comply were taken. In addition, "simple conformity with industry-wide practice" fails to demonstrate good faith under the Act.[26] Defendants are therefore liable for an additional $737,133, in liquidated damages, to be distributed to the employees listed in pages 2 to 17 of Plaintiff's Exhibit 9.

Plaintiff is further entitled to an injunction against future violations of the overtime (§7) and recordkeeping (§11) provisions of the Act. Once violations have been established, the Court should ordinarily grant injunctive relief unless there is no reasonable probability that violations will recur.[27] Accordingly, an injunction requiring future compliance by Defendants, including their employees, agents and successors, is appropriate.

---

[24] *Cole Enters.*, 62 F. 3d 781
[25] *Martin v. Indiana Michigan Power Co.*, 381 F. 3d 574 (6th Cir. 2004).
[26] *Reich v. S. New England Telecom. Corp.*, 121 F. 3d 58, 71 (2nd Cir. 1997)
[27] *Brock v. Big Bear Mkt. No. 3*, 825 F. 2d 1381 (9th Cir. 1987).

## **CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests the Court to order that Defendants pay the requested back wages, plus an equal amount in liquidated damages, and in addition for an order of injunction against future violations of the overtime and recordkeeping provisions of the Act.

/s/ Sandra B. Kramer
SANDRA B. KRAMER (0002071)
Senior Trial Attorney
HEMA STEELE (0081456)
Trial Attorney
U.S. Department of Labor
881 Federal Office Building
1240 E. 9th Street
Cleveland, Ohio 44199
(216) 522-3876; (216) 522-7172 Fax
Kramer.Sandra@dol.gov; Steele.Hema@dol.gov

OF COUNSEL:

BENJAMIN T. CHINNI
Associate Regional Solicitor

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: David M. Duwel, Esq., and James T. Ambrose, Esq., David M. Duwell & Associates, 130 W. Second Street, Suite 2101, Dayton, Ohio 45402.

/s/ Sandra B. Kramer
SANDRA B. KRAMER (0002071)
Senior Trial Attorney for Plaintiff
HEMA STEELE (0081456)
Trial Attorney
U.S. Department of Labor
881 Federal Office Building
1240 E. 9th Street
Cleveland, Ohio 44199
(216) 522-3876; (216) 522-7172 Fax
Kramer.Sandra@dol.gov; Steele.Hema@dol.gov