IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, DAYTON

**HILDA L. SOLIS**, Secretary of Labor
United States Department of Labor

      Plaintiff,

vs.

**CASCOM, INC.**, *et al.*

      Defendants.

Case No. 3:09 CV 257
Judge Thomas M. Rose

---

**DEFENDANTS' POST-TRIAL MEMORANDUM**

---

## I. INTRODUCTION

The damage phase of this proceeding came on for hearing before this Court on November 22, 2011. The Department of Labor bears the burden on this issue and as indicated by Ms. Kramer in her opening statement on November 22, 2011, it needs to establish just and reasonable damages (Tr. at 4). The DOL has failed to meet its burden. It's damage calculation was predicated on interviews with approximately 20 of Cascom's 250 installers and the subsequent testimony of 7 of these installers (at the damage hearing the DOL conceded that it did not rely on the testimony of government witness, Russ England. (Tr. at 27-28.)

The DOL has consistently argued that it was entitled to follow its approach because Cascom did not keep adequate records to determine overtime hours worked (Tr. at 4). Yet its only witness at the damage assessment hearing, David Huster, admitted that he did not take into account or consider the substantial records maintained by Cascom, which were provided by Cascom during the discovery phase of this proceeding and which contained the most relevant

and informative documentation of any overtime hours worked by the installers (*See* Defendant Exhibit A and Tr. at 64-66). For these reasons, the DOL is not entitled to recover damages for any hours worked by installers after their initial training period.

## II.   THE DEPARTMENT OF LABOR'S DAMAGES ARGUMENT

The DOL admitted in its testimony that its calculations were all predicated on interviews of twenty former Cascom installers and then modified somewhat by the testimony of seven former installers who testified at the liability phase of this proceeding.

Mr. Huster, in his testimony, initially stated that Cascom did not keep records of hours worked for installers (Tr. at 10). He also testified that his back wage computations were revised based on trial testimony and that "half time was computed by adding up the earnings that people had for piece rate work roughly May of 2007 to May of 2008 and multiply that times the decimal that comes off a decimal chart that we have which then multiplied by earnings would yield the time that was due for hours over 40 per week." (Tr. at 10.) For this one year period of time, Mr. Huster calculated an incredible overtime pay amount of $737,133.00. (*See* DOL Exhibit 9.)

Mr. Huster, relying on the trial testimony of the seven installers referenced above calculated that each installer worked 22.5 hours of overtime during each week of their employment with Cascom. He then claimed he reduced the hours by 25% to allow for weeks when they may not have had overtime hours. (Tr. at 14.) Actually Huster applied the 25% reduction not to the actual hours claimed, but rather to the decimal coefficient appearing on the chart which the DOL uses to compute half time for overtime hours worked. (See Plaintiff Exhibit 9-DOL 18.) Huster testified that whether he applied the 25% reduction factor to the hours or the decimal coefficient, the result would be the same. (Tr. at 29-30, 31.) This is an inaccurate statement as will be further demonstrated below.

2

Mr. Huster, later in his testimony (Tr. at 16, 26) admitted that he used payroll records provided by Cascom to calculate overtime hours, contradicting his counsel's earlier statement that Cascom failed to keep payroll records (Tr. at 4). Huster testified that he used payroll records from Cascom to compute both back wages due to trainees and for installers performing piece rate work (Tr. at 16, 19). He indicated he utilized 62.5 hours for all installers who did not testify (Tr. at 14) and then multiplied this by .135 (Tr. at 19) to arrive at the amount allegedly owed for overtime. Huster testified that the only difference for the installers who testified was that he used a decimal that corresponded to the number of hours that they said they worked individually (Tr. at 21-22). In actuality, this was a distinction without a difference, since all the installers that Huster interviewed, whether they testified or not, claimed to work between 60-70 hours each work week.

Huster admitted that because the installers were involved with piece work, their actual earnings did not have to track the number of hours worked-because installers were paid by the task, not the hour and certain tasks were valued more and consequently paid more than other tasks (Tr. at 32-33). Huster also testified that he took from Cascom payroll records the amount of money that each installer worked, estimated that each installer worked 62.5 hours per week and determined the overtime dollars owed to them. This is inherently a flawed promise since the gross amount paid to installers weekly is not directly related to the hours actually worked and you need the actual amount of hours worked to properly determine the amount of overtime owed. A much better picture of the actual hours worked was available through Cascom and was provided by Cascom by way of Defendant's Exhibit A, but Mr. Huster chose to ignore it. (*See* Tr. at 45-47.)

3

In regards to Defendant's Exhibit A, Huster testified that he wasn't able to really tell what the records showed and that he shared this thought with DOL counsel, Ms. Kramer (Tr. at 45). The records, as observed by the Court, were not that difficult to understand (Tr. at 64-65). Yet Mr. Huster did not use the records to determine the calculation of overtime hours (Tr. at 47).

Throughout the DOL's investigation and the subsequent proceedings herein, Cascom consistently maintained that the installer's did not work 60 to 70 hours per week and that the number of hours worked was substantially less (Tr. at 46). Mr. Huster testified that he did not remember talking to Cascom supervisors during his interviews that could have shed light on actual hours worked (Tr. at 50). Instead he simply chose to believe everything that the twenty installers (out of 250 installers) told him and consistently resisted any attempt to verify the dollars advocated by the installers either through interviewing Cascom management officials or reviewing their records. Huster admitted that Cascom's Exhibit A, in respect to total hours worked, was "vastly different" than what he heard in his interview of Cascom installers (Tr. at 66).

During his testimony Mr. Huster acknowledged that Cascom's Exhibit A were documents provided pursuant to discovery served upon Cascom by the DOL, that they were produced during a deposition of Defendant Gress at Cascom's counsel's offices and that, upon his request, the documents were also provided by way of a CD (Tr. at 66-67).

### III. CASCOM'S PERSPECTIVE ON THE DAMAGE ISSUE

Cascom provided the testimony of Heather Duwel-Mehl ("Mehl") at the damage assessment hearing. Mehl testified credibly about her extensive and varied work history at Cascom as well as how Defendant's Exhibit A was assembled and prepared (Tr. at 72).

4

Mehl who is now 27 began working for Cascom at the age of 16. She worked in all phases of the business and was very familiar with how the installers performed their responsibilities, the normal hours worked and how they were paid (Tr. at 71-109 generally).

Ms. Mehl testified in regards to Defendant's Exhibit A, that it was prepared due to Mr. Huster's request for more accurate time keeping records. In response to that request, Cascom took screen shots from Time Warner's computer system, and then made copies of same and created Defendant's Exhibit A. The screen shots documented start times and stop times for each task performed on a particular day by the individual installer (Tr. at 72). The records also reflect the time the installer was actually out in the field up to the time he/she called the dispatcher to inform them they were done for the day (Tr. at 73). The actual information on Defendant's Exhibit A came from the installers phone calls to Time Warner and/or Cascom (during the time Cascom was doing the dispatching). (Tr. at 73.) Importantly Exhibit A also included down time, time when the installers were not performing their actual tasks, but spent at Cascom after arriving at the shop in the morning, traveling to their first assignment and until they returned home-so that all work hours were reflected (Tr. at 73-74). Ms. Mehl testified that an additional 30 minutes was added each day to reflect time spent at the office, before actually commencing work for Time Warner customers (Tr. at 74-75).

Exhibit A clearly reflects substantial differences in what the installers/witnesses testified to at trial. Mehl testified that the records which comprise Defendant's Exhibit A do not reflect that the installers worked an average of 65-70 hours per week, rather in many instances, "they didn't even work 40 hours a week… sometimes as low as 15 or 20. That average does not give a 65 to 75 hour range. I don't know that any of these guys ever did that." (Tr. at 85.) And since Mr.

5

Huster predicated his entire damage calculation on the testimony of seven of the DOL's witnesses, Plaintiff has failed to establish that its claimed damages are fair and reasonable.

Mehl also testified as to the difficulty involved in preparing Cascom's Exhibit A. Cascom was required to review every day involved in the DOL audit and then it was required to review the individual installer's work record for that day and then take screen shots which was then converted to a spreadsheet. Mehl personally was involved in the preparation of this exhibit and testified that it would sometimes take more than one week to create the record for an individual installer who worked during the entire period of the audit (Tr. at 80). Obviously, many Cascom personnel were involved in preparing Exhibit A and took significant time to assemble the document which was requested in discovery by the DOL. Unfortunately Cascom was only able to complete the assignment for names A-O in the alphabet before it went out of business and lost its ability to access the Time Warner computer system (Tr. at 84).

Mehl testified that the documents comprising Exhibit A were provided in numerous boxes to Mr. Huster and Ms. Kramer at the time of Julia Gress deposition. She further testified that they (Huster/Kramer) looked at the production and that they had previously seen this format via earlier e-mails (Tr. at 82). Mehl went on to testify that Mr. Huster initially didn't understand what the columns meant, but that she explained to him how the columns were to be read. She also indicated that Mr. Huster then asked for a CD, a computer format that could be downloaded, and that he was provided with same. (Tr. at 83.)

Ms. Mehl further testified that she met Mr. Huster at the Dayton office on two occasions and complied totally with his request for information (Tr. at 85). The DOL has always agreed that Cascom cooperated in the investigation. Defendant's Exhibit A is the best evidence of the hours worked by Cascom installers. However, it took significant time to prepare. The report was

6

started as soon as Mr. Huster asked for the records but was not completed (as to installers with last name A-O) until the time of Defendant Gress' deposition. Defendant Exhibit A reflects actual information provided by the actual installers for whom Plaintiff is seeking to recover overtime pay. It is not based on the installer's memory when interviewed by Mr. Huster and is free of any bias or tendency to inflate actual hours worked to recover more overtime pay. The twenty individuals interviewed were aware why Mr. Huster was asking these questions and human nature itself suggests that these numbers were subject to a certain level of padding. Defendant's Exhibit A (which includes an additional 30 minutes of time each day to cover office time and commuting to the first scheduled job) would allow Plaintiff to compute a fair and reasonable estimate of actual overtime hours worked. Actual hours could be computed for installers with last names A-O and an average could be computed for individuals with last names P-Z.

For some reason, Plaintiff has been unwilling to sit down with Cascom representatives and review documentation to support its' continuing assertion that the number of overtime hours being claimed by the installers is clearly erroneous. The assertion that Cascom owes $737,133.00 is incredulous and if Plaintiff is not willing to base its claim on the best evidence available, it should forfeit any claim for compensation.

A final word on Mr. Huster's method of calculation is warranted. Notwithstanding, his assertion that it doesn't matter when the 25% reduction is applied to the number of hours worked or the applicable decimal coefficient, in truth it matters very much. Let's look at an individual installer who had $20,000 of earnings during the audit period. Mr. Huster would refer us to the U.S. Department of Labor Coefficient Table (Plaintiff's Exhibit 9- DOL 18). During his testimony he urged the Court to look at the first vertical column, (hours) and go to the number

7

62. He then said to go to the horizontal column at ½. This resulted in a decimal co-efficient of .180 which he adjusted to .135 by applying the 25% reduction factor. Based on earnings of $20,000 the amount of overtime owed would be $20,000 x .135 or $2700.00. However, if you apply the 25% reduction to the 62 hours (which more reflects his testimony about weeks where overtime was not worked, and considering holidays, vacations and illnesses), hours are reduced to 47 and if one continues to use the ½ column, the decimal becomes .079. Multiplying $20,000 by .079 results in $1580, substantially less than the $2700 number.

## CONCLUSION

Where an employer has failed to maintain accurate payroll records, an employee carries his burden to establish a prima facie case under the FLSA if he shows he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work "as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). In this case, there is substantial evidence that Cascom maintained accurate payroll records, but the DOL chose to ignore them. Furthermore, there is substantial evidence that even if Cascom's Exhibit A is ignored, the Plaintiff has failed to establish a just and reasonable inference.

    Respectfully submitted,

    DUWEL LAW

    */s/ David M. Duwel*
    DAVID M. DUWEL (0029583)
    130 W. Second St., Suite 2101
    Dayton, Ohio 45402
    (937) 297-1154 Telephone
    (937) 297-1152 Facsimile
    david@duwellaw.com

    ***Attorney for Defendants***

8

*/s/ James T. Ambrose*
James T. Ambrose (0011151)
130 W. Second Street, Suite 2101
Dayton, Ohio 45402
Phone: (937) 229-9999
Fax: (937) 229-7898
jtambrose@daytonlaw.net

**Attorney for Defendants**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically on January 6, 2012. Notice of this filing will be sent to all parties by the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David M. Duwel*
David M. Duwel (0029583)

9